IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ZANE CROSBY                                                    PLAINTIFF

VS.                            CIVIL ACTION NO: 5:14-cv-49-DCB-MTP

BOBBY BELL, in his official capacity; CITY OF
BROOKHAVEN, MISSISSIPPI; JESSE LEGGETT, BARRY
HUFF, and GEORGE M. LAMBRIGHT, in their
individual capacities                                        DEFENDANTS

<u>ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT</u>

This cause is before the Court on Defendants', Barry Huff and Jesse Leggett, Motion for Summary Judgment **[docket entry no. 18]** and Defendant's, George M. Lambright, Motion to Dismiss, or in the Alternative, Motion for Summary Judgment **[docket entry no. 20]**. The Court held a hearing on the motions, where all parties testified. Having reviewed the motions and responses, testimony and other evidence, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Procedural and Factual Background

In the early morning hours of September 1, 2013, Plaintiff Zane Crosby attended a party at a friend's house with his girlfriend, Ashley Walker. Crosby and his girlfriend had spent the day together and decided to ride together and some other friends to the party. Crosby and Walker left his vehicle in a parking lot in Brookhaven where they got into another vehicle to carpool. Later

1

that evening, Walker left the party but returned with Crosby's mother, Sheila Bowman. Walker's mother followed in a separate vehicle. Crosby then left with Bowman and Walker, and Bowman drove in her car towards Bowman's and Crosby's home, with Walker's mother behind them. Before they arrived, Crosby got out of the vehicle, while it was still moving, and left on foot. Bowman, Walker, and Walker's mother then went to the store where Crosby had left his own vehicle; Walker and Crosby had earlier met with friends to carpool to the party. Bowman believed that Crosby would try to drive his vehicle home, and Walker wanted to retrieve her belongings from Crosby's vehicle. When Crosby did not appear, Bowman "called 911 and told them [Crosby] had been drinking and due to recent deaths of [four] Lincoln County teenagers who had been drinking and driving that [she] did not want to run the risk of [Crosby] driving a motor vehicle that night." Resp. Ex. 1 ("Aff. Sheila Bowman") 2, ECF No. 23-1. Although the timeline of events as testified to at the hearing is incomplete–there is a gap of unexplained time between when Crosby exited his mother's vehicle and when Bowman called 911–, what happened then is irrelevant.

According to the investigation report, Defendants Barry Huff and Jesse Leggett were dispatched at 1:41am in response to Bowman's call. When Officers Huff and Leggett arrived at the store parking lot, Crosby had still not appeared. The officers testified that they spoke with Bowman, following up on her call. The

uncontroverted testimony shows that Bowman[1] described her son as intoxicated and indicated that he would "fight." During this conversation, Defendant George M. Lambright arrived in a separate patrol car. While the officers were speaking with Bowman, one of the officers noticed Crosby at a nearby gas station. Huff called out to Crosby to come towards them. Instead, Crosby then entered a wooded area near a fast food restaurant to avoid his mother, girlfriend, and the officers. Crosby testified that he did not hear Huff's command because of the distance between them and the ambient noise in the area. Huff and Lambright pursued Crosby into the wooded area while Leggett moved his patrol car to a parking lot closer to where the officers had seen Crosby. Officers Huff and Lambright called out to Crosby, but he did not respond.[2] Officer Lambright then entered the wooded area and found Crosby and ordered him out of the woods. Crosby testified that he had placed himself in a prone position in the grass, trying to avoid detection.

---

[1] Bowman did not testify at the hearing. Walker, who did testify, was present for the conversation between Bowman and the officers but testified that she did not hear them.

[2] The affidavits present differing accounts of what happened during the search for Crosby. Crosby and Bowman aver that the officers were merely shouting out Crosby's name. Aff. Sheila Bowman 2; Resp. Ex. 2 ("Aff. Zane Crosby") 2, ECF No. 23-2. Huff, however, states in his affidavit that Crosby "ignored [his] verbal commands to come out from hiding." Mot. Summ. J. Ex. D ("Aff. Barry Huff") ¶ 6, ECF No. 18-4. Officers Huff and Lambright testified that they called out to Crosby and ordered him to come out of the wooded area during the search. Crosby testified that they only called out his name and that he knew they were searching for him.

Lambright testified that he found Crosby by nearly stepping on him. Crosby went unhandcuffed with Lambright to the gas station parking lot. Lambright testified that he chose not to handcuff Crosby upon finding him because it had been his observation through his years of police work that a potential arrestee will be compliant up to the point where handcuffs are displayed, at which time the individual in custody will quite often become hostile. The Court notes a difference between the accounts of Lambright and Crosby. Crosby testified that Lambright held Crosby's hands behind his back as they walked whereas Lambright testified that Crosby walked completely unrestrained.

The officers then handcuffed and arrested Crosby. Some of the facts of the arrest are in dispute. Crosby testified that he and Lambright arrived at the parking lot, and Huff immediately yelled at Crosby two or three times to "Get the f--- on the ground!" In response, Crosby turned his head and asked what he had done wrong. Huff and Lambright testified that Huff asked Lambright if Crosby was already handcuffed to which Lambright responded no. Then Huff said that they should handcuff Crosby. When Huff placed his hand on Crosby, Crosby threw up his arms. Huff and Lambright interpreted this as physical resistance to the arrest.

In both accounts, Officer Huff then performed a takedown on Crosby and forced him to the ground. Officer Lambright held Crosby's legs, and Officer Leggett handcuffed Crosby's wrists.

According to Crosby, Huff placed him in a choke hold, cutting off his air supply, and any struggling on his part was a result of trying to alert Huff to the fact that he could not breathe. Crosby testified that he blacked out while being choked. According to the officers, Huff did not choke Crosby, and Crosby fought the officers kicking and moving his arms in an attempt to resist arrest. They testified that Crosby did not lose consciousness.

Afterwards, the officers helped Crosby to his feet then placed him in a patrol car to take him to the Lincoln County Jail. Crosby was charged with public drunkenness, disorderly conduct, and resisting arrest. There is evidence that Crosby sustained injuries during the arrest including "a ruptured ear drum in [his] right ear[] and hematomas in both eyes." Aff. Zane Crosby 2. Crosby was later found not guilty by the Municipal Court of the City of Brookhaven.

On June 23, 2014, Crosby filed suit against Huff, Leggett, and Lambright in their individual capacities and Defendant City of Brookhaven, Mississippi, and Defendant Bobby Bell in his official capacity as the Chief of Police of Brookhaven. He brought claims for excessive force and false arrest under the Fourteenth Amendment Due Process Clause and various state law torts. Compl. 5-8. All defendants answered. See Answer, ECF No. 9 (Leggett); Answer, ECF No. 10 (Bell, City of Brookhaven, Mississippi, and Huff); Answer, ECF No. 11 (Lambright). On November 21, 2014, Huff and Leggett

moved for summary judgment, arguing that they are qualifiedly immune. Mot. Summ. J., ECF No. 18. On that same date, Lambright moved to dismiss or alternatively for summary judgment also arguing his qualified immunity. Mot. Dismiss, ECF No. 20. On January 27, 2015, the Court entered a Show Cause Order, ordering Crosby to respond to the motions. Order Show Cause, ECF No. 22. A hearing on the motions was held on July 8, 2015, where all parties testified. The motions are now ripe for decision.

## II. Analysis

### A. Motion to Dismiss

The Court will consider Lambright's motion as a motion for summary judgment and not as a motion to dismiss. A motion under Federal Rule of Civil Procedure 12(b) "must be made before pleading." Fed. R. Civ. P. 12(b). Because Lambright answered, he cannot now make a motion under Rule 12(b).[3] Further, the motion cannot be considered as a motion for judgment on the pleadings under Rule 12(c), which would apply the same standard as Rule 12(b)(6), see Guidry v. Am. Public Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007). A motion made under Rule 12(b)(6) or 12(c) that asks the court to consider matters beyond the pleadings "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Although the memorandum and motion largely refer to the

---

[3] All references in this opinion are to the Federal Rules of Civil Procedure unless otherwise noted.

complaint, there are several times in footnotes where Lambright refers to matters outside the pleadings.

## B. The Legal Standards

### 1. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The moving party bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

7

But the nonmovant must meet his burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A party asserting that a fact is "genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

2. Qualified Immunity

"Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, . . . [t]he plaintiff bears the burden of negating the qualified immunity, but all inferences are drawn in his favor." Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). In assessing a claim of qualified

8

immunity, courts apply the two pronged analysis established in
Saucier v. Katz, 533 U.S. 194 (2001), but the court may address the
prongs in any order, Pearson, 555 U.S. at 225.

One prong asks "whether Plaintiff's allegations establish a
constitutional violation." Hope v. Pelzer, 536 U.S. 730 (2002). The
second prong asks "whether the right was clearly established."
Saucier, 533 U.S. at 201. "[T]he contours of the right must be
sufficiently clear that a reasonable official would understand that
what he is doing violates that right." Anderson v. Creighton, 483
U.S. 635, 640 (1987).

### C. Fourteenth Amendment Claims

In his complaint, Crosby invokes the Fourteenth Amendment Due
Process Clause to support his claims for false arrest and excessive
force. Compl. 5. He cites to no other Constitutional provision. The
defendants correctly point out that the Fourteenth Amendment does
not guarantee rights against false arrest or excessive force.
Therefore, to the extent that Crosby attempts to make any due
process claims against Huff, Leggett, or Lambright, those claims
are dismissed. See Reynolds v. New Orelans City, 272 F. App'x 331,
338 (5th Cir. 2008); Graham v. Connor, 490 U.S. 386, 395 (1989)
(holding the Fourth Amendment is the exclusive vehicle for
analyzing claims of excessive force and false arrest).

But the lack of citation to the appropriate amendment is not
fatal to Crosby's claims. District courts in the Fifth Circuit have

previously refused to dismiss <u>pro se</u> complaints for merely citing to an inappropriate Constitutional Amendment. See <u>Cross v. City of Grand Prairie</u>, 3:96cv0466L, 2000 WL 233295, at *4 (N.D. Tex. Feb. 28, 2000). And courts in other circuits have refused to dismiss even when the plaintiff had the assistance of counsel. See <u>Jones v. Natesha</u>, 151 F. Supp. 2d 938, 942 n.3 (N.D. Ill. 2001). And the Supreme Court recently held that an "imperfect statement of the legal theory supporting the claim asserted" does not allow dismissal where the plaintiff has "informed the [defendant] of the factual basis for the[] complaint." <u>Johnson v. City of Shelby, Miss.</u>, 135 S. Ct. 346, 346-47 (2014). Further, it would seem the height of inefficiency to grant summary judgment based on a "scrivener's error" where the plaintiff would be allowed to amend his complaint to incorporate the correct Amendment. See <u>Jones</u>, 151 F. Supp. 2d at 942 n.3 (finding incorrect citation was "a mere scrivener's error"). Even though Crosby has the aid of counsel, the Court will, therefore, analyze Crosby's claims as if they had been brought under the appropriate Amendment.

### D. False Arrest

To prevail on a claim for false arrest, Crosby must show that the officers did not have probable cause to arrest him. <u>Haggerty v. Tex. So. Uni.</u>, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient

for a reasonable person to conclude that the suspect had committed or was committing an offense.'" Id., at 655-56 (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)).

The defendants argue that probable cause existed to arrest Crosby for all three of the crimes with which he was eventually charged. Mem. Supp. 6-7, ECF No. 21 (public drunkenness and disorderly conduct); Mem. Supp. 8-10, ECF No. 19 (public drunkenness, disorderly conduct, and resisting arrest). Probable cause for either public drunkenness or disorderly conduct would be sufficient to support Crosby's arrest. The Court notes that resisting arrest fails as a defense against a claim of false arrest because it requires an underlying lawful arrest, which requires separate probable cause. See Miss. Code Ann. § 97-9-73 (2003).

The Court finds that the officers had probable cause to arrest Crosby for disorderly conduct. In Mississippi, the elements of the crime of disorderly conduct are (1) breach of the peace and (2) failure to obey the lawful command of a law enforcement officer. Miss. Code Ann. § 97-35-7(1) (2006).

As to the first element, breach of the peace, the statute requires that the refusal to obey be done "with intent to provoke a breach of the peace, or under circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace." § 97-35-7(1). An overview of recent Mississippi case law on this element reveals that it requires some level of threat by the

11

arrestee. See S.M.K.S. v. Youth Court of Union Cnty., 155 So. 3d 747, 750 (Miss. 2015) (finding breach of the peace element met because "officers at the scene described the situation as 'very hostile' and as 'mass chaos'"); Smith v. Picayune, 701 So. 2d 1101, 1102 (Miss. 1997) (finding that the presence of a weapon "greatly enhanced the possibility of grievous injury to the police officers or others if the disturbance escalated" and that the officers acted out of a need "to control conduct . . . which greatly increased the potential for sudden violence"); Matthews v. City of Madison, 143 So. 3d 579, 585 (Miss. Ct. App. 2013) (upholding arrest and conviction for disorderly conduct where the officer arrested the defendant "for officer safety and the safety of everyone there"); Sendelwick v. State, 101 So. 3d 734, 740-41 (Miss. Ct. App. 2012) (finding that arrest for disorderly conduct was justified because of an arrestee's "combative conduct"); Bovan v. State, 706 So. 2d 254, 256-57 (Miss. Ct. App. 1997) (finding that "[t]he specter of significant breaches of the peace loom[ed]" over allowing refusal to obey command to allow police officer to enter home of arrestee to execute felony arrest warrant on someone else). Here, Bowman's mother had told the officers that Crosby would likely fight them when they encountered him. And they had been called to prevent a potential drunk driving incident, which the Fifth Circuit and Supreme Court have described as "an extremely dangerous crime." Begay v. United States, 553 U.S. 137, 141 (2008); United States v.

<u>Marquez</u>, 626 F.3d 214, 219 (5th Cir. 2010) (quoting <u>Begay</u>). At the hearing, Officer Huff testified that he was concerned for his own safety and the safety of the public. The Court finds that the breach of peace element is satisfied.

As to the second element, disobedience, the Court finds that Crosby disobeyed a direct and lawful command issued by Huff. Huff yelled out to Crosby to come to where the officers were, but Crosby instead absconded into the wooded area. Further, while Crosby was hiding from the officers, Huff and Lambright ordered him to come out, which he refused to do. Crosby testified that he never heard any of these commands but that he knew the officers were looking for him. The commands were lawful because they were issued during the course of the officers' investigation into Bowman's 911 call. Even if Crosby did not hear the commands, it was reasonable for the officers to believe that Crosby had heard their commands and had intentionally disobeyed them. "A police officer who reasonably but mistakenly concludes that he has probable cause to arrest a suspect is entitled to qualified immunity for the arrest." <u>Tarver v. City of Edna</u>, 410 F.3d 745, 750 (5th Cir. 2005) (citing <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)). The disobedience element is met. Therefore, the officers had probable cause to arrest Crosby.

Because there was probable cause to arrest Crosby, there was no violation of Crosby's Fourth Amendment rights. Because there was no constitutional violation, the defendants are entitled to summary

judgment based on qualified immunity on the claim for false arrest. The Court, therefore, finds that Huff, Leggett, and Lambright are entitled to summary judgment on this claim.

### E. Excessive Force

"[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008). "What constitutes an injury in an excessive force claim is . . . subjective—it is defined entirely by the context in which the injury arises." Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999). "[T]he amount of injury necessary to satisfy [the] requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996). "The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." Bush, 513 F.3d at 501. Courts determine the reasonableness of force based on (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officer or others," and (3) "whether he is actively resisting arrest or

14

attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. "[I]n determining whether the use of force was clearly excessive and clearly unreasonable, [the court] evaluate[s] each officer's actions separately, to the extent possible." <u>Poole v. City of Shreveport</u>, 691 F.3d 624, 628 (5th Cir. 2012).

1. Officers Leggett and Lambright

The Court finds that Crosby has not shown any injury resulting from the force applied by Officers Leggett or Lambright. Lambright held Crosby's legs, and Leggett placed the handcuffs on Crosby. Crosby has not shown any injury to either his legs and feet or his arms and hands after his arrest. Crosby cannot show "an injury that . . . resulted directly and only from the use of force" by either officer. <u>Bush</u>, 513 F.3d at 501. His demonstrated injuries are only to his eyes and ear. Therefore, the Court will grant summary judgment based on qualified immunity on the excessive force claims against Lambright and Leggett.

2. Officer Huff

Before discussion of the <u>Graham</u> factors, the Court notes that the injuries Crosby suffered were not conclusively shown to be a result of the force used by Huff against Crosby or as a result of the two men hitting the ground. The Court carefully reviewed the intake photograph which was taken at 2:21am when Crosby was booked into custody at the Brookhaven Police Department. The photograph indicates some possible redness around the neck area, and inasmuch

as the photograph is a frontal view, the area around the right ear is not clearly shown. There is no noticeable injury to either eye. The Court has also observed the photograph which was taken on September 2nd, the day after the incident, and although there are no cuts or abrasions, there is dried blood just below Crosby's right ear, as well as some discoloration of both eyes. As stated above, Crosby must show "an injury that . . . resulted directly and only from the use of force" by Huff. Bush, 513 F.3d at 501. There is evidence of redness in the neck area, a discolored and possibly swollen eye, together with an injury to the right ear in the medical report taken the next day. It is impossible to determine whether these injuries occurred as a result of pressure applied to the neck area or as a result of the fall to the ground by two men, Crosby weighing 190 pounds and Officer Huff weighing 215 pounds. The Court could grant summary judgment on this ground alone, as it did as to Lambright and Leggett, but even assuming that Crosby's injuries are a direct and exclusive result of the force applied by Huff, the result is the same.

As stated above, to determine whether the force applied is reasonable the Court looks to the severity of the crime at issue, whether the suspect is an immediate threat to the officers or others, and whether the suspect is resisting arrest or trying to escape. Graham, 490 U.S. at 396. Officer Huff focuses his argument

16

on whether the force used was reasonable.[4] He argues: (1) that the crime at issue, drunk driving, was severe; (2) Crosby posed a danger to himself and others; and (3) Crosby attempted to flee and resisted arrest. Mem. Supp. 12, ECF No. 19. Crosby disputes all three factors. Resp. 3-4.

First, the Court analyzes the crime at issue at the time of Crosby's arrest. Although the courts in this circuit often appear to treat the crime at issue as synonymous with a crime for which the defendant was arrested, one court has described "the relevant inquiry [a]s what a reasonable officer on the scene would have believed the crime at issue to be."[5] Chacon v. City of Austin,

_____

[4] Huff argued in his briefs and at the hearing that the use of a choke hold is not in itself legally impermissible. Mem. Supp. 8 n.4, ECF No. 21 (citing Stogner v. Sturdivant, 515 F. App'x 280, 281 n.1 (5th Cir. 2013)). But this footnote in an unpublished opinion simplifies the rule. The Fifth Circuit has held that choke holds are not "objectively-unreasonable conduct where the suspect physically resisted arrest." Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir. 2000) (emphasis added); see also Gassner v. City of Garland, Tex., 864 F.2d 394, 400 (5th Cir. 1989), abrogated on other grounds, Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004), ("Given [the suspect]'s resistance to the arrest, the [choke hold] used by [the officer] in this case was reasonable. . . ."); Raley v. Fraser, 747 F.2d 287, 290 (5th Cir. 1984) ("[T]he [district] court's findings indicate that each of the four choke holds came in response to resistance by [the suspect]."). In the version of events put forth by Crosby, he offered no physical resistance to the arrest, but in the version put forth by the defendants, Crosby did physically resist. It is beyond dispute that Crosby fled from the police.

[5] The Fifth Circuit, in an unpublished opinion, favorably discussed the Chacon court's analysis of this factor. See Chacon v. Copeland, 577 F. App'x 355, 360-61 (5th Cir. 2014) (per curiam).

Tex., No. A12CA226, 2013 WL 2245139, at *11 (W.D. Tex. May 21, 2013); see also Mayfield v. Brewer, No. 2:13cv73, 2014 WL 5392464, at *6 (S.D. Miss. Oct. 22, 2014) (discussing the crimes the defendant was suspected of committing and the crimes the defendant was actually arrested for in analysis of the first Graham factor). But even using this broader interpretation of crime at issue, the Court finds that no reasonable officer could reasonably believe the crime at issue, when Huff performed the takedown, was drunk driving. The potential for drunk driving certainly motivated the officers in their investigation of Bowman's call and in their search for Crosby, but at some point when three police officers, a mother, a girlfriend, and the girlfriend's mother stand between a suspect and his vehicle, the potential to drive while intoxicated reduces to zero. In fact, no account of the events places Crosby in the same parking lot as his vehicle at any point. The crimes at issue were: (1) public drunkenness, (2) disorderly conduct, and (3) resisting arrest, the crimes for which Crosby was arrested. These three crimes together "are not particularly heinous." Shelton v. City of Laurel, NO. 2:06cv111, 2007 WL 1141501, at *5 (S.D. Miss. Apr. 17, 2007). Therefore, this factor weighs in favor of Crosby's "Fourth Amendment right to be free [from] the use of excessive force." Id.

Second, the Court determines whether Crosby posed "an immediate threat to the safety of the officers or others." Graham,

490 U.S. at 396. Huff argues that Crosby posed a threat because

> [h]is mother reported he was drunk and disorderly, she was unable to control him, he got out of her car and started walking the streets in the middle of the night, he was attempting to retrieve and drive his vehicle despite his intoxication, he initially ran and hid from officers, he refused to comply with officers's [sic] verbal command to come out of the bushes, and he refused to allow officers to put his hands in cuffs.

Mem. Supp. 12, ECF No. 19. Further, Huff testified that Bowman told him that Crosby would fight because he had been drinking and that Crosby had a problem with figures of authority. And Huff had previously been called to the home of Bowman and Crosby to quell some type of disturbance caused by Crosby. The details of that encounter are unclear. As stated above, Huff testified that he was concerned not only for his own safety, but the safety of the citizens of Brookhaven as a result of Crosby's behavior. Also, it is clear that Crosby was under the influence of alcohol as indicated in the medical records, as described by his mother, and as evidenced by his actions, all of which leads to the ineludible conclusion that this man was under the influence of alcohol. Therefore, this factor weighs in favor of finding that the force applied by Huff was reasonable.

Third, the Court determines whether Crosby attempted to flee or to resist arrest. Graham, 490 U.S. at 396. Crosby had already attempted to flee upon first sighting of the officers. Even assuming Crosby could not hear the officers calling out to him, Crosby admitted at the hearing that he knew the officers were

searching for him and that he intentionally sought to evade them through concealment. Crosby had fled once, behaved irrationally, and could flee again. Whether Crosby offered any physical resistance to the arrest prior to the takedown is uncertain. Crosby testified that he did not; the officers testified that he did. It is uncontested that Huff and Crosby ended up on the ground, with Huff restraining Crosby with his arms around Crosby's neck. It is impossible for this Court or for that matter, a jury, to determine the degree of pressure applied by the officer. What is clear, however, is that once on the ground, Crosby resisted, struggling and kicking, as one officer attempted to hold his legs while another attempted to place the cuffs. This is uncontested. The Court therefore finds that this factor weighs in favor of Huff.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and the reasonableness of that force is a fact-intensive inquiry. Id. Huff used no weapon—no firearm, no baton or nightstick, and no taser, nor was there any striking with hands or fists. It is reasonable that a well trained officer would place restraints on Crosby. Based on the foregoing analysis, the Court will grant summary judgment in favor of Huff based on his qualified immunity.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . "Not every push or shove, even if it may later seem

> unnecessary in the peace of a judge's chambers" violates
> the Fourth Amendment. The calculus of reasonableness must
> embody allowance for the fact that police officers are
> often forced to make split-second judgments–in
> circumstances that are tense, uncertain, and rapidly
> evolving–about the amount of force that is necessary in
> a particular situation.

Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973))

(internal citations omitted). The force Huff used may have been

more than was absolutely necessary to effectuate Crosby's arrest

but it was not excessive to the need created by Crosby's behavior

and the information Huff possessed. It is this level of force that

qualified immunity protects.

### F. State Law Claims

In his Response, Crosby concedes that his state law claims

against Lambright are subject to the Mississippi Tort Claims Act

("MTCA") and that he cannot sue on them in this case. Resp. 4.; see

also Miss. Code Ann. § 11-46-7 (1993) (exclusiveness of remedy).

Because Crosby never alleges that either Huff or Leggett were

acting outside the scope of their employment, the Court finds that

the state law claims against them, if any, are also subject to the

MTCA. See Miss. Code Ann. § 11-46-5(1) (1992). Therefore, the Court

finds that summary judgment is appropriate on these claims in favor

of Huff, Leggett, and Lambright.

Crosby also concedes that the claims against Lambright in his

official capacity are duplicative of those asserted against the

City of Brookhaven, Mississippi. Resp. 4; see also Shaidnagle v.

Adams Cnty., Miss., — F.3d —, —, No. 5:13cv112, 2015 WL 365820, at
*3 (S.D. Miss. Jan. 27, 2015) (quoting Will v. Mich. Dep't of State
Police, 491 U.S. 58, 71 (1989)) ("[A] suit against an official in
his official capacity 'is no different from a suit against' a
governmental entity. . . ."). The Court finds that the official
capacity claims against Huff and Leggett, if any, are similarly
duplicative of those against the City of Brookhaven, Mississippi.
Therefore, the Court finds that summary judgment is appropriate on
these claims in favor of Huff, Leggett, and Lambright.

### III. Conclusion

Officers Huff, Leggett, and Lambright moved for summary
judgment on all of the claims made against them, including false
arrest, excessive force, and various torts. The Court finds that
there was probable cause to arrest Crosby for disorderly conduct,
so that summary judgment should be granted in favor of the
officers. The Court further finds that summary judgment should be
granted in favor of the officers on the excessive force claims.
Lastly, the Court finds that Crosby had conceded his state law and
official capacity claims against the officers.

### IV. Order

IT IS HEREBY ORDERED THAT Defendants', Barry Huff and Jesse
Leggett, Motion for Summary Judgment is GRANTED.

FURTHER ORDERED THAT Defendant's, George M. Lambright, Motion
to Dismiss, or in the Alternative, For Summary Judgment is GRANTED.

SO ORDERED this the 23rd day of July 2015.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE